### Taylor v.
### Oxford Oil Co.
*[Cite as 6 AOA 162]*

*Case No. CA-89-17*
*Muskingum County, (5th)*
*Decided August 27, 1990*

*Robert N. Conley, 6755 Sugargrove Road, Chandlersville, Ohio 43727, for Appellant.*

*Anthony J. Celebrezze, Jr., Attorney General of Ohio, for Appellees.*

*Cordelia A. Glenn, Assistant Attorney General, Chief, Employment Services Section, 145 S. Front Street, 5th Floor, Columbus, Ohio 43215, for Appellees.*

HOFFMAN, J.

This is an appeal from a decision of the Court of Common Pleas of Muskingum County which in turn upheld a decision of the Board of Review in an unemployment benefits action. Claimant-appellant is Dwight W. Taylor and the Oxford Oil Company, et al., are appellees (hereinafter appellee).

The facts demonstrate that Taylor began working for appellee in June of 1977. On November 6, 1987, he was discharged and on November 9, 1987, filed a claim with the Ohio Bureau of Employment Services (appellee). Taylor's claim for benefits was initially denied. Taylor's request for reconsideration was denied, and Taylor timely appealed the denial upon reconsideration.

The matter came on for hearing before a referee (Capella). Subsequently, the referee issued and filed a decision containing findings of fact. Said decision reversed the Administrator's decision upon reconsideration, stating "claimant was discharged by Oxford Oil company without just cause." (P. 2 of decision).

Subsequently, this employer requested "further appeal" through a letter sent by the Frank Gates Service Company. The gist of the letter was that the employer took a different view of the evidence than the duly appointed referee of the Board of Review. Apparently, the Board of Review considered that the subject letter was sufficient to allow "further appeal" and the matter came on before a second and different referee. Claimant and his counsel were present at this second hearing (October 20, 1988). However, Oxford's only witness from the first hearing was not present at the second hearing held by referee John M. Scull.

On January 23, 1989, the Board rendered a decision reversing its original referee's decision. Said decision stated in pertinent part:

"On November 1987, the claimant was discharged from employment upon his return from his vacation as a result of his failure to comply with the employer's policies and procedures, resulting in two oil spills."

Decision at 4.

"The facts established the claimant was discharged as a direct result of two oil spills discovered during the week the claimant was on vacation."

Decision at 5.

Taylor appealed to the trial court and that court affirmed the Board's decision as stated *supra.* (Decision and Journal Entry filed September 26, 1989).

Appellant timely appeals and raises the following three assignments of error:

"ASSIGNMENT OF ERROR NO. I.

IT WAS ERROR FOR THE COURT OF COMMON PLEAS TO DETERMINE THAT THE UNEMPLOYMENT COMPENSATION BOARD OF REVIEW'S REVERSAL OF A DECISION FOR THE APPELLANT, WHICH DECISION WAS BASED UPON A FULL-SCALE HEARING, WAS LAWFUL, REASONABLE, AND NOT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHEN IT IS CLEAR AND OBVIOUS THAT THE BOARD'S REFEREE, WHICH REFEREE CONDUCTED A SECOND HEARING AND THEN REVERSED THE DECISION OF THE FIRST REFEREE, WHO HAD CONDUCTED THE FULL-SCALE HEARING, NEVER BOTHERED TO READ THE TRANSCRIPT FROM THE FIRST HEARING.

R.C. 4141.28(J).

"ASSIGNMENT OF ERROR NO. II.

IT WAS ERROR FOR THE COURT OF COMMON PLEAS TO DETERMINE THAT THE UNEMPLOYMENT COMPENSATION BOARD OF REVIEW HAD ACTED IN A LAWFUL OR REASONABLE MANNER, WHEN THE COURT OF COMMON PLEAS KNEW, OR SHOULD HAVE KNOWN, THAT THE REFEREE WHO WROTE THE BOARD'S OPINION, WHICH OPINION WAS NOT BASED UPON A REVIEW OF THE ENTIRE RECORD, WHICH WRITTEN OPINION HAD LITTLE OR NOTHING TO DO WITH THE UNDISPUTED FACTS AND SWORN TESTIMONY, AND WHICH WRITTEN OPINION

WAS DEFINITELY COPIED DIRECTLY FROM A WILD, HEARSAY LETTER WRITTEN TO THE BOARD BY APPELLEE OXFORD OIL COMPANY'S REPRESENTATIVE, HAD NO LAWFUL OR REASONABLE BASIS TO REVERSE THE DECISION OF THE REFEREE WHO HELD THE FIRST HEARING.

"ASSIGNMENT OF ERROR NO. III. IT WAS ERROR FOR THE COURT OF COMMON PLEAS TO DETERMINE THAT THE UNEMPLOYMENT COMPENSATION BOARD OF REVIEW HAD ACTED LAWFULLY, REASONABLY, AND NOT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THE BOARD REVERSED A DECISION FOR THE APPELLANT BY ADOPTING AN OPINION THAT FOUND THAT THE APPELLANT HAD BEEN DISMISSED FOR JUST CAUSE."

Before discussing the claims of error, we summarize the facts.

On October 9, 1987, claimant, who was then employed as a "pumper," one who performs basic care and maintenance on oil and gas wells, for appellee Oxford Oil, performed his duties at a well on the east side of Zanesville (well No. 1) (T. 1, p. 41, lines 7-11), and at a well near Cumberland, Ohio (well No. 2) (T. 1, p. 55, lines 1-6). That day, Friday, October 9, 1987, was Mr. Taylor's last day before his vacation. He returned to work on Monday, October 19, 1987. (T. 1, p. 63, lines 6-25, and p. 64, lines 13). Also see T. 1, p. 21, lines 17-25, and p.22, lines 1-19).

When Mr. Taylor returned from vacation on Monday, October 19, 1987, he was told by Mr. Tysinger, his supervisor, that there had been two oil spills while he was on vacation, one at well no. 1 and one at well no. 2. The person responsible for taking care of the claimant's wells while he was on vacation, was Mr. Tysinger, his supervisor.

At that time on October 19, 1987, no employee warnings of any kind were given to the claimant. Indeed, the claimant continued to perform the exact same duties he had previous to going on vacation for the next three weeks.

On Monday, November 2, 1987, two weeks after the claimant had returned from vacation, and three weeks after the two oil spills, the claimant was shown two "Employee Warning Reports." These two warning reports state that the date of the warnings is November 2, 1987. That was three weeks after the two oil spills,

which the employer claimed occurred the Monday (well No. 1) and the Tuesday (well No. 2) after the claimant had gone on vacation. A supervisor, Mr. Smith, apparently signed these employee warnings on November 3, 1987. An attachment to these warnings was, apparently, signed by Smith and Tysinger on November 4, 1987.

Taylor was shown the two warning notices, on Monday, November 2, 1987, which was two weeks after he had returned from vacation, which notices were, according to the notices, for carelessness and work quality. Taylor refused to sign either of these two notices. Also, that portion of the warning report reserved for a "warning decision" is blank. Also, the warning reports, dated November 2, 1987, indicated that a previous written warnings were given on April 2, 1987 and June 3, 1987.

After Taylor was shown the two notices on November 2, 1987, he continued to work for the employer for yet another week. Taylor was discharged by the employer on Friday, November 6, 1987. Although Taylor was discharged by the employer on Friday, November 6, 1987, he was told to work the rest of the day and go out and service his wells. Also, on the very day that Taylor was discharged, he was told by the person who discharged him, that the wells which he had actually serviced would be contracted out to an independent contractor, rather than to an employee, and that he, Taylor, may have a chance to apply for that job.

In regard to oil spill No. 1 (the one on the east side of Zanesville) Tysinger alleged that spill was Taylor's fault because he failed to shut off a valve. However, Tysinger testified that he was just assuming that oil spill No. 1 was Taylor's fault and that there was no way he could possibly know that Taylor was responsible for oil spill No. 1. (T. 1, p. 44, lines 15-20).

In regard to oil spill No. 2 (the one in Cumberland, Ohio), the employee warning report, dated November 2, 1987, claimed that Taylor left a valve handle on and that some cows turned the valve handle band the 15 barrels of oil were lost. But, at the first hearing, when Tysinger was asked how could anyone know that cows turned the valve handle he said the following: "Nobody knows." (T. 1, p. 49, lines 1-17). Tysinger also testified that there should have been a dike around oil well No. 2, and if there had been a dike there, most of the 15 barrels of lost oil would not have been lost. Taylor denied that a handle was on a valve and that a plug was not in place on oil well No. 2.

We now turn to the assignments of error.

I. II. and III.

We treat the assignments of error together. Our standard of review herein is whether the Board's ultimate decision (as affirmed by the trial court) was reasonable, lawful and supported by the manifest weight of the evidence. See *Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St.2d 41, syllabus and 45.

Having reviewed the record, particularly the transcripts of both hearings cited *supra,* all of appellant's assignments of error are well taken.

As the Board explicitly stated in its decision, appellant's discharge was caused solely by and directly as a result of the two spills as argued by appellant to this court, the undisputed and unchallenged testimony adduced at the first hearing all produced the inescapable conclusion that Taylor could not be responsible for the spills. Furthermore, the evidence demonstrated that supervisor Tysinger was responsible for monitoring the two wells in question on a daily basis. It was further demonstrated that the first hearing and not rebutted at the second hearing that third parties reported the two spills.

It is this court's determination that the decision of the first referee (Capella) was clearly supported by record testimony, this testimony left "intact" and unchallenged after further appeal was conducted by the second hearing. As held by referee Capella, the instant termination was without just cause and denial of benefits was unlawful.

For the above reasons, we sustain all three assignments of errors raised by appellant and reverse the decision of the Court of Common Pleas of Muskingum County. See judgment entry.

MILLIGAN, P.J., and SMART, J., concur.