[Cite as *In re M.H.*, 2012-Ohio-3371.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97618**

# IN RE: M.H.
# A Minor Child

## JUDGMENT:
## REVERSED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU 99106791

**BEFORE:** Boyle, J., Blackmon, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:** July 26, 2012

**ATTORNEY FOR APPELLANT, MOTHER**

Judith M. Kowalski
333 Babbitt Road
Suite 323
Euclid, Ohio   44123


**ATTORNEYS FOR APPELLEE, FATHER**

Martin Keenan
Buckeye Legal Center
11510 Buckeye Road
Cleveland, Ohio   44104

Kathleen M. Kirby
2012 West 25th Street, Unit 701
Cleveland, Ohio   44113

Troy M. Hough, Guardian ad litem
24298 Beech Lane
North Olmsted, Ohio   44070

MARY J. BOYLE, J.:

{¶1}  Appellant-mother [1] appeals the trial court's decision granting father's motion to show cause and finding her in contempt.   We reverse.

Procedural History and Facts

{¶2} On September 28, 2010, father filed a motion to show cause.   In his motion, father specifically argued that mother should be held in contempt "for failing to abide by the court orders dated 17 September 2007, concerning visitation, and prohibitions about talking about the case with the minor child and for failure to pay child support in the amount of $180.86 plus fee as ordered since January 21, 2009."   In his brief in support of the motion, father referenced evidence presented at the trial on his motion to designate him the residential parent and legal custodian held in March 2010.   Specifically, he argued that, despite M.H.'s counselor, teacher, and G.A.L. all opining that extracurricular activities would be very beneficial to M.H., mother had failed to enroll M.H. in any extracurricular activities and was threatening to not take M.H. to his football games and practices on the Wednesdays that she had custody.   Father further sought reimbursement

[1]   The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.

for the expenses that he incurred related to extracurricular activities and child support arrears that mother allegedly owed.

**{¶3}** At the time that he filed his motion, father was designated the temporary residential parent of M.H., who was 11 years old at the time.

**{¶4}** On January 4, 2011, the trial court ruled on father's motion to modify custody and visitation, finding that there had been a change of circumstances necessitating that father be designated the primary residential parent and legal custodian of M.H. The trial court further issued a new parenting order, setting forth the parties' new parenting time schedule and modifying the earlier shared parenting order of September 17, 2007.

**{¶5}** The hearing on father's motion to show cause was not held until October 21, 2011 — *more than a year after father filed it and almost ten months after the trial court's modification of the parenting order.* Prior to the hearing, father never filed a second show cause hearing or moved to amend his previously filed motion to show cause. Notably, the evidence presented at the hearing focused on the parenting plan as modified in the January 2011 order — not the September 17, 2007 order that gave rise to the motion to show cause. Although mother's counsel did not move to strike the testimony offered by father relating to alleged violations not raised in his motion, mother's counsel did argue in closing arguments that the court must focus solely on the arguments raised in the motion to show cause, i.e., mother's failure to reimburse for extracurricular activities and alleged failure to take M.H. to football.

**{¶6}** On October 31, 2011, the trial court ultimately found "mother to be in contempt of court for failure to exercise parenting time by agreement in advance of the day and time for parenting time, or if there was no agreement, by filing of a motion." The trial court made no finding of contempt based on the September 17, 2007 order identified in the motion to show cause or the specific arguments raised in the motion to show cause, including mother's alleged arrears in child support or failure to reimburse.[2] Instead, the trial court relied exclusively on the modified January 4, 2011, order and the testimony presented at the hearing that the mother was not complying with that order. The court sentenced mother to three days in jail, suspended, with the opportunity to purge the contempt as follows:

> [T]o purge said contempt, mother is ordered to: mother shall be available for parenting time on the first and third weekends of each month along with mid-week visitation on the second and fourth Wednesdays of each month; and that mother is responsible for picking [up] and returning child.
>
> Pending further order of the court, mother shall pick up the child from his home on the first and third Fridays by 6:00 p.m. Mother shall provide transportation for the child from his home to counseling appointments on the second and fourth Wednesdays, returning the child home at 8:00 p.m. in accordance with the parenting order.[3]

**{¶7}** From this decision, mother appeals, raising the following three assignments

---

[2] We note that father's cross-assignment of error related to the trial court's failure to impose a financial sanction to reimburse him for his out-of-pocket expenses for M.H.'s extracurricular activities has been stricken. Father failed to file a timely notice of appeal.

[3] We note that the purge order was corrected as quoted above pursuant to a nunc pro tunc journal entry filed on November 14, 2011.

of error:

"[I.] The trial court erred to the prejudice of appellant by finding her in contempt of court, as the movant did not establish by clear and convincing evidence that the appellant violated the court's order.

"[II.] The trial court erred and abused its discretion to the prejudice of appellant in that the court did not consider whether the appellant had attempted to comply with the court order, and thus the finding of contempt was unreasonable and arbitrary.

"[III.] The trial court erred in finding that appellant is in contempt of its order, in that such a finding was not required to coerce compliance with the underlying order, and the complainant suffered no loss by the appellant's alleged noncompliance."

### Civil Contempt

{¶8} In her first assignment of error, mother argues that there was insufficient evidence to support a contempt finding and that the trial court should have treated the motion to show cause as moot once the trial court adopted a new parenting order. While we do not agree that the motion to show cause necessarily became moot by virtue of the later modified parenting order, we do have grave concerns with how the proceedings below were conducted and find that the trial court abused its discretion in finding civil contempt and by imposing a penalty.

{¶9} Contempt is a disobedience or disregard of a court order or command. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). "The purpose of contempt proceedings is to secure the dignity of the courts and the

uninterrupted and unimpeded administration of justice." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph two of the syllabus. Contempt can be either direct or indirect. *In re J.M.*, 12th Dist. No. 2008-01-004, 2008-Ohio-6763, ¶ 46. While a direct contempt occurs within the actual or constructive presence of the court, indirect contempt involves conduct that occurs outside of the actual or constructive presence of the court. *Id.*

{¶10} A person found to be in contempt of court is subject to punishment. *See* R.C. 2705.05. Contempt is classified as civil or criminal depending upon the character and purpose of the punishment. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). Whereas criminal contempt is solely punitive, civil contempt contemplates punishment that is remedial or coercive and for the benefit of the complainant. *Id.* at 253. And although a prison sentence may be imposed in cases of civil contempt, the contemnor must be afforded the opportunity to the purge the contempt. *Id.* "Once the contemnor purges his contempt, any sanctions will be discontinued because compliance has been achieved." *U.S. Bank Natl. Assn. v. Golf Course Mgt., Inc.*, 12th Dist. No. CA2008-08-078, 2009-Ohio-2807, ¶ 16. Accordingly, the contemnor is said to "carry the keys to his prison in his own pocket." *Brown* at 253.

{¶11} In this case, we are reviewing the trial court's finding of an indirect civil contempt. Here, father was seeking a contempt finding against mother based on allegations of mother violating the September 2007 parenting order. The trial court's penalty also demonstrates that the contempt was civil as opposed to criminal; indeed, the

trial court specifically sought to coerce mother to comply with the parenting order for the benefit of the father.

{¶12} The burden of proof for civil contempt is clear and convincing evidence. *Flowers v. Flowers*, 11th Dist. No. 10AP-1176, 2011-Ohio-5972, ¶ 9. Further, we review a trial court's finding of civil contempt under an abuse of discretion. *In re J.M.*, 2008-Ohio-6763, ¶ 51. Therefore, we will not disturb the trial court's finding of contempt unless we find such finding to be arbitrary, unreasonable, or unconscionable. *Id.*

{¶13} Based on the record before us, we find that the trial court abused its discretion in finding mother in contempt. Here, the trial court's contempt finding was based solely on the *January 4, 2011 parenting order* — an order that was not the subject of the underlying motion to show cause. Indeed, father's motion to show cause alleged that mother violated a *September 17, 2007 order* — the parenting order that was in effect at the time that father filed his motion. It was unreasonable for the trial court to find mother in contempt for violating an order that was not the basis of the underlying motion to show cause. Likewise, we cannot say that clear and convincing evidence was presented that the mother violated the September 17, 2007 order. Indeed, father's evidence at the contempt hearing focused on alleged violations of the modified parenting order issued on January 4, 2011. We therefore reverse the finding of contempt and sustain the first assignment of error.[4]

---

[4] Although not expressly raised by mother on appeal, we also note that the purge order

{¶14} Having sustained the first assignment of error, we find that mother's second and third assignments of error are moot.

{¶15} Judgment reversed. The trial court is instructed to vacate the contempt finding and sentence.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY J. BOYLE, JUDGE

PATRICIA ANN BLACKMON, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR

---

attached to the civil contempt finding is defective as a matter of law; it requires that mother comply with the January 4, 2011 parenting order by performing future conduct for an indefinite period of time or until "further order of the court." It is well settled that a purge order must provide "a true opportunity for purging" — it cannot simply purport to regulate future conduct. *Tucker v. Tucker*, 10 Ohio App.3d 251, 252, 461 N.E.2d 1337 (10th Dist.1983); *see also Mackowiak v. Mackowiak*, 12th Dist. No. CA2010-04-009, 2011-Ohio-3013, ¶ 56. "Insofar as such an order purports to regulate future conduct, the order can have no effect because any effort to punish a future violation would require a new notice, hearing, and determination." *Ryder v. Ryder*, 5th Dist. No. 2001CA00190, 2002-Ohio-765, at *2.