[Cite as *CHJ Corp. v. Foley*, 2014-Ohio-1061.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100004**

# CHJ CORP.

PLAINTIFF-APPELLANT

vs.

# MARCIE L. FOLEY, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-769556

**BEFORE:** Blackmon, P.J., McCormack, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** March 20, 2014

**ATTORNEY FOR APPELLANT**

Douglas P. Whipple
Whipple Law, L.L.C.
13940 Cedar Road, Suite 420
University Heights, Ohio 44118

**ATTORNEYS FOR APPELLEES**

**For Marcie L. Foley**

Michael K. Webster
800 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**For Director of Ohio Dept. of Job and Family Services**

Mike DeWine
Ohio Attorney General

Patrick MacQueeney
Assistant Ohio Attorney General
Ohio Attorney General's Office
615 West Superior Ave., 11th Floor
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, P.J.:

**{¶1}** Appellant CHJ Corp. ("CHJ") appeals the trial court's affirmance of the decision of the appellee Unemployment Compensation Review Commission ("Commission") finding appellee Marcie Foley ("Foley") terminated her employment with CHJ for just cause. CHJ assigns the following two assigned errors for our review:

> I. The allowance of appellee's claim on this record is unlawful, unreasonable, and against the manifest weight of the evidence.

> II. The hearing officer committed prejudicial error, contrary to law, by considering the issue of spousal support in making his determination; particularly because the Domestic Relations Court was actively exercising its exclusive jurisdiction over the matter and because the divorce decree was not in evidence before the hearing officer.

**{¶2}** Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

## Facts

**{¶3}** Foley was employed with CHJ from January 1988 until she quit on April 19, 2011. CHJ is an apartment complex. Foley helped CHJ manage its rental properties.

**{¶4}** On April 20, 2011, Foley filed an application for unemployment compensation benefits, which was denied on May 11, 2011, by the Office of Unemployment Compensation. Foley requested a redetermination, and on June 23, 2011, the redetermination request was denied.

{¶5} On July 14, 2011, Foley filed an appeal from the redetermination to the Commission. On August 24, 2011, a telephonic hearing was conducted with a hearing officer. The hearing officer made the following findings.

{¶6} Foley was married to the president of CHJ, Joseph Chiro, until their divorce in November 2010. Prior to the divorce, Foley was permitted to come and go at will and was paid an annual salary of $54,000. She was also given yearly bonuses and had a 401K account with CHJ. After the divorce, Chiro brought his adult children into the company to help run operations. Chiro took away Foley's office keys, desk, and computer. He also removed her from her administrative responsibilities and added menial chores like mopping floors.

{¶7} Chiro also took away Foley's personal leave. Foley was the only employee to not receive a year-end bonus in 2010. Chiro also began recording the conversations that occurred in the office and reviewed the conversations with his children in closed-door meetings. Chiro forbade Foley from using her personal cellphone while at the office, although Chiro's son was permitted to use his personal cellphone. Chiro's children would also "gang up" on Foley, constantly correcting her and berating her. When Foley complained to Chiro, he did nothing to stop the harassment.

{¶8} On March 22, 2011, Foley told Chiro that her mother had broken her arm and that she needed time to care for her mother. Foley asked that her time be reduced temporarily to three days a week so that she could help her mother to recuperate. Chiro responded by taking away Foley's 401K contribution and salary, and changed her pay to a

strict hourly rate of $22.26 per hour. According to the hearing officer, this amounted to a 17 percent reduction in Foley's hourly pay. Foley quit on April 19, 2011.

{¶9} The hearing officer overturned the redetermination decision and found that Foley quit for just cause, finding in pertinent part:

> Claimant quit due to unreasonable, harassing working conditions. Claimant's boss was also her former husband and there was no one else with authority to stop his behavior. She reasonably sought to address her concerns with management to no avail.
>
> By reducing claimant's pay seventeen percent Mr. Chiro gave her an independent, equally adequate in-and-of itself, reason to quit under Ohio law. A significant reduction in pay is a reasonable basis to quit. A reduction of ten percent is the usual rule of thumb for "significant." Seventeen percent is certainly a significant reduction in pay. The pay cut was not appropriate under the circumstances. For that reason alone claimant's quit would have been found for just cause.

Commission's order, August 29, 2011.

{¶10} After CHJ's redetermination application was denied, CHJ appealed the Commission's decision to the Cuyahoga County Court of Common Pleas. After both parties briefed the matter, the trial court affirmed the Commission's decision, stating in pertinent part:

> Pursuant to R.C. 4141.282(H), this court has jurisdiction to hear appeals from the UCRC. "If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the Commission." [*Irvine v. Unemp. Bd. of Rev.*, 19 Ohio St.3d 15, 482 N.E.2d 587 (1985). Upon review, this court finds that the UCRC's decision that Foley quit her employment with CHJ with just cause is supported by the evidence in the record. Accordingly, the decision is affirmed.

Journal Entry, May 31, 2013.

**Allowance of Claim**

{¶11} In its first assigned error, CHJ argues that the Commission's decision was unlawful, unreasonable, and against the manifest weight of the evidence because the evidence did not support the decision.

{¶12} R.C. 4141.282(H) governs the standard of review for decisions made by the Commission that applies to all appellate courts. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 697, 1995-Ohio-206, 653 N.E.2d 1207. The statute provides that the common pleas court shall reverse the Commission's decision only if it finds "that the decision of the Commission was unlawful, unreasonable, or against the manifest weight of the evidence." R.C. 4141.282(H). Appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, but they do have the duty to determine whether the Commission's decision is supported by the evidence in the record. *Tzangas* at 696, citing *Irvine v. Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 17-18, 482 N.E.2d 587 (1985). *See Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031.

{¶13} CHJ argues that there was no evidence to support the hearing officer's conclusion that CHJ reduced Foley's pay by 17 percent. Chiro explains that Foley was switched from a salary employee to an hourly employee based on Foley's decision to work part-time to help her mother. In determining her hourly rate, Chiro claims he took the salary she earned when she worked full-time, which he estimated to be $1,968.03 every two weeks, and reduced it pro rata. He based his calculation on a 44 hour work

week because that is when the office is open for business. The hearing officer, however, based his calculations on a 40 hour work week. Foley did not testify regarding how many hours she worked a week.

{¶14} If the reduction in pay was the only basis for the hearing officer finding just cause, it would give us pause in affirming the trial court's decision because the hearing officer based his calculations on a 40 hour week, while CHJ based the salary on a 44 hour week. The hearing officer does not account for why he did not base his calculations on a 44 hour week. However, the hearing officer also cited the hostile work conditions as providing just cause for Foley's quitting her job.

{¶15} CHJ claims there was no specific evidence of hostile work conditions; however, Foley testified that her desk and computer were taken away, her job responsibilities were drastically reduced, she was verbally abused and demeaned by Chiro's adult children, and she was the only employee to not receive a bonus. Employee Elizabeth Blystone corroborated Foley's claims of a hostile work environment. Chiro, of course, presented reasons justifying this behavior; however, it was within the hearing officer's discretion to determine who to believe.

{¶16} CHJ argues that there was no evidence to support the hearing officer's conclusions that CHJ wrongfully took away Foley's 401(K) contributions and wrongfully failed to pay Foley a merit bonus. However, the only evidence before the hearing officer was Foley's word against Chiro's word. No documentation was presented regarding the 401(K). Therefore, we must defer to the hearing officer regarding whom he found to be

more credible.  The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the Commission's decision.  *Irvine*, 19 Ohio St.3d at 18, 482 N.E.2d 587.

**{¶17}** CHJ argues the hearing officer erred by finding Elizabeth Blystone to be an unbiased witness because her email, which discussed the hostile environment, showed her disdain for Chiro and his family.  Whether she was a hostile witness or not is irrelevant because pursuant to R.C. 4141.281(C)(2), "[h]earing officers are not bound by common law or statutory rules of evidence or by technical or formal rules of procedure."  Thus, the Ohio Rules of Evidence do not apply to unemployment compensation hearings. *Simon v. Lake Geauga Printing Co.*, 69 Ohio St.2d 41, 44, 430 N.E.2d 468 (1982). Interestingly, Blystone was a 16 year employee of CHJ's and provided her telephonic testimony while seated with CHJ's attorney and Chiro, thus giving the appearance she was testifying on behalf of CHJ.

**{¶18}** Blystone testified that if it were her, instead of Foley, she would have also quit.  Although this did constitute opinion testimony, as we previously stated, the evidence rules do not apply to unemployment compensation hearings.  *Id.*  Even if the evidence rules applied, her opinion would have been admissible because her lay opinion was rationally based on her perception and helpful to the determination of a fact in issue. *See* Evid.R. 701.

**{¶19}** Chiro also claims that the hearing officer ignored material evidence such as the fact that Foley violated company policies, instigated arguments,  and engaged in

inappropriate behavior. However, the hearing officer heard the evidence and stated that "although both husband and wife presented generally credible testimony, their perceptions naturally diverged. It is not so much that either was untruthful in the hearing as each truly saw things differently." The hearing officer clearly believed things were as Foley perceived them to be, not as Chiro did; it was within the officer's discretion to make this determination.

{¶20} CHJ also argues that the hearing officer erred by ignoring the fact that just prior to Foley's resignation, Chiro had hired a private investigator to investigate whether Foley was embezzling money from the company. None of this evidence was discussed at the hearing beyond the fact that CHJ's attorney stated that Foley was not given access to the computer because of "suspicion of money being missing." This line of questioning was not further developed, and there is no evidence that the hearing officer prevented introduction of this evidence. Whether she had actually stolen money was not proven at the time of the hearing. It was within the hearing officer's discretion to weigh the importance of the information. Accordingly, CHJ's first assigned error is overruled.

## Domestic Relations Divorce Decree

{¶21} In its second assigned error, CHJ claims that the hearing officer committed prejudicial error by considering the issue of spousal support.

{¶22} The hearing officer stated in his opinion that "spousal support is not considered remuneration that would be deducted from a weekly unemployment benefit amount. Meaning, claimant could conceivably receive both." This is merely a

statement regarding how spousal support affects unemployment compensation. We have found no provision in R.C. Chapter 4141, and CHJ has failed to cite to a provision, that states that spousal support is considered remuneration that is deducted from unemployment compensation. Therefore, his statement that spousal support was not remuneration is correct.

{¶23} The hearing officer's statement also did not encroach on the domestic relations court's jurisdiction. He merely said it was "conceivable" she could receive both. He was not ordering that she receive both.[1] Accordingly, CHJ's second assigned error is overruled.

{¶24} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

TIM McCORMACK, J., and
MELODY J. STEWART, J., CONCUR

---

[1] While this case was pending on appeal, this court affirmed the domestic relations court's order that found Foley to have been constructively discharged, thereby triggering the spousal support provision in the divorce decree. *Chiro v. Foley,* 8th Dist. Cuyahoga No. 99888, 2013-Ohio-4808.