[Cite as *Chiro v. Foley*, 2014-Ohio-3728.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100962

## JOSEPH A. CHIRO

PLAINTIFF-APPELLANT

vs.

## MARCIE L. FOLEY

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-10-330950

**BEFORE:** E.T. Gallagher, J., Jones, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** August 28, 2014

**ATTORNEY FOR APPELLANT**

Douglas P. Whipple
Whipple Law, L.L.C.
13940 Cedar Road, Suite 420
University Heights, Ohio 44118


**ATTORNEY FOR APPELLEE**

Joyce E. Barrett
Law Offices of Joyce E. Barrett
800 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1}   Plaintiff-appellant, Joseph A. Chiro ("Chiro"), appeals a judgment of Cuyahoga County Common Pleas Court, Domestic Relations Division, that found him in contempt of court for failure to pay spousal support to defendant-appellee, Marcie L. Foley ("Foley").   We find no merit to the appeal and affirm.

{¶2} Foley and Chiro were divorced on November 19, 2010 by virtue of an agreed judgment entry of divorce that incorporated the parties' separation agreement.   Prior to their divorce, Foley had been an employee of Chiro's company, CHJ Corporation, d.b.a. Westview Acres Apartments.   In the final divorce decree, the parties agreed to the following with respect to spousal support:

> Husband and Wife each waive his or her right to any spousal support which may be due from the other at the present time. However, the court retains jurisdiction for a period of three years to award spousal support to the Wife for three (3) years in the event Wife's employment is terminated not for cause in which event Wife will be entitled to monthly spousal support commensurate with her current salary of $50,000.00 plus benefits.

On February 9, 2011, Foley filed a motion to establish spousal support, alleging that Chiro constructively terminated her employment by creating a hostile work environment. Chiro denied the allegations and asserted that Foley quit her job of her own accord.

{¶3} The trial court determined that Chiro terminated Foley's employment without cause and awarded her supposal support in the amount of $50,000 per year plus the sum of $464.91 per month, which represented the monthly value of her health insurance benefits.   The court ordered spousal support for a period of two years beginning in April 2011 and ending in April 2013.   Chiro appealed the spousal support order, and this court

affirmed the trial court's judgment. *Chiro v. Foley*, 8th Dist. Cuyahoga No. 99888, 2013-Ohio-4808.

**{¶4}** In May 2013, Foley filed a motion to show cause why Chiro should not be held in contempt of court for failure to pay spousal support. She alleged Chiro failed to comply with the spousal support order and that he had an arrearage of $114,370.80. Foley also filed a motion for attorney fees to recover the cost of litigating her show cause motion. In June 2013, this court denied Chiro's motion to stay execution of judgment pending appeal.

**{¶5}** At a hearing on Foley's motions, the parties stipulated, through counsel, that the magistrate would base his decision on (1) the payment history report dated April 29, 2013 that demonstrated Chiro had an arrearage of $110,078.53, (2) an attorney fee affidavit submitted within seven days of the hearing, and (3) Chiro's denial that he was in contempt of court for failing to abide by the court's spousal support order.

**{¶6}** On December 9, 2013, Chiro filed a notice of payment of spousal support. Two days later, on December 11, 2013, the magistrate issued a decision finding Chiro in contempt of court. The magistrate found that Chiro presented "no evidence of an inability to comply timely and in full with the prior order of spousal support." The magistrate concluded that "[h]is failure to comply with the order must therefore be deemed willful."

**{¶7}** In accordance with the parties' stipulations, Foley filed an affidavit in support of her claim for attorney fees in the amount of $8,315. In the magistrate's decision dated

December 11, 2013, the magistrate indicated he had reviewed the hours logged by Foley's attorney and determined the attorney's hourly rate was reasonable because it was consistent with fees charged by other similarly-qualified lawyers in the community. The magistrate excluded $700 in fees as unreasonable. Accordingly, the magistrate ordered Chiro to pay Foley the sum of $7,565 in attorney fees plus the costs of the proceedings. The trial court overruled Chiro's timely objections, and Chiro now appeals and raises three assignments of error.

## Motion to Strike

{¶8} In the first assignment of error, Chiro argues the trial court abused its discretion when it failed to grant his motion to strike Foley's motion to show cause. He contends the trial court violated his right to due process because it ignored the motion.

{¶9} We review the trial court's ruling on a motion to strike for an abuse of discretion. *Abernethy v. Abernethy*, 8th Dist. Cuyahoga No. 81675, 2003-Ohio-1528, ¶ 7. The term "abuse of discretion" means "an unreasonable, arbitrary, or unconscionable action." *State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 2009-Ohio-4149, 914 N.E.2d 159, ¶ 15. It is "a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." (Citations and quotations omitted.) *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 130.

{¶10} In support of his argument, Chiro relies on *Aglinsky v. Cleveland Builders Supply Co.*, 68 Ohio App.3d 810, 589 N.E.2d 1365 (8th Dist.1990), and *Mas v. FL Aerospace Corp.*, 2d Dist. Champaign No. 94-CA-15, 1995 Ohio App. LEXIS 2985 (July

3, 1995).  In *Aglinsky*, this court found the trial court had erred by depriving the plaintiffs of the opportunity to respond to the defendant's motion for summary judgment.  The trial court had previously denied the defendant's first motion for summary judgment, and the defendant filed a second motion for summary judgment based on new evidence.  The plaintiffs filed a motion to strike the motion for summary judgment and for sanctions.  The trial court subsequently granted the defendant's second motion for summary judgment without ruling on the plaintiffs' motion to strike and without notifying plaintiffs that it would rule on the motion for summary judgment before plaintiffs had any opportunity to respond.  *Id*. at 819.

{¶11} In reversing the summary judgment, this court concluded the trial court had:

> sent out confusing mixed signals to plaintiffs, thereby abusing its discretion by failing to rule on plaintiffs' motion to strike.  The trial court should have either ruled upon plaintiffs' motion to strike or notified plaintiffs the trial court was reconsidering the granting of defendant's motion for summary judgment.

*Id*.

{¶12} Similarly, in *Mas*, the appellate court reversed a summary judgment where the plaintiff had also not been given an opportunity to respond.  In response to the defendant's motion for summary judgment, the plaintiff filed a motion to amend his complaint, and the summary judgment motion was continued indefinitely until the motion to amend was decided.  *Id*. at *3.  The defendant objected to the motion to amend, but the trial court took no action until several years later, when it granted the motion for summary judgment without notice.  *Id*.

{¶13} In reversing the trial court's judgment, the appellate court held that the trial court abused its discretion by depriving the plaintiff of the opportunity to respond to the summary judgment motion as required by Civ.R. 56(C). The court explained that inherent in Civ.R. 56(C) was the requirement of procedural due process and that therefore the trial court should have either ruled on the motion to amend or advised the plaintiff that it was going to consider the motion for summary judgment in order to give him an opportunity to respond. *Id*. at \*9.

{¶14} We find *Mas* and *Aglinsky* distinguishable from the facts of this case. In both cases, the court gave the plaintiffs reason to believe they would have an opportunity to respond to the motions for summary judgment after the court ruled on other pending motions. Indeed, the ruling on the other motions could impact the arguments plaintiffs would raise in their response briefs. By ruling on the summary judgment motions without keeping the promise that plaintiffs could later file response briefs, the trial courts deprived the plaintiffs of due process and fundamental fairness.

{¶15} Chiro argues the trial court deprived him of due process when it granted Foley's motion to show cause without ruling on his motion to strike. In the motion to strike, Chiro argued, as he does here, that the trial court should have stricken Foley's motion to show cause because she cited R.C. 2705.31 in the motion, and no such Ohio Revised Code section exists. He contends that because Foley failed to cite the correct code section, he was not properly notified of Foley's claim against him, and his due process rights were violated.

**{¶16}** Due process requires "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn.*, 28 Ohio St.3d 118, 124-25, 502 N.E.2d 599 (1986), quoting *Mullane v. Cent. Hanover Bank & Trust* Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Thus, a party must be given reasonable notice that is sufficient to allow that party to prepare a defense and then must be provided a meaningful opportunity to be heard before an order requires payment and simultaneously prohibits the exercise of a legal right. *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

**{¶17}** The notice of the show cause hearing served on Chiro stated that "the contempt motion * * * is subject to the provisions of Ohio Revised Code Chapter 2705 et seq." R.C. 2705.031 provides a cause of action for failure to pay spousal support. Obviously, Foley's reference to R.C. 2705.31 instead of R.C. 2705.031 was a typographical error because R.C. 2705.031 lies within R.C. Chapter 2705 et seq. Thus, Chiro received the mandatory notice required by R.C. 2705.031, and the typographical error in Foley's motion to show cause was not a "fatal deficiency." Furthermore, Chiro had an opportunity to prepare and be heard in his defense before the court made its final judgment. There was therefore no due process violation.

**{¶18}** The first assignment of error is overruled.

**Notice of Payment**

**{¶19}** In the second assignment of error, Chiro argues the trial court abused its discretion when it granted Foley's motion to show cause because he filed a notice of payment of spousal support two days before the court rendered its decision. He contends that because he paid the arrearage two days prior to the magistrate's decision, he should not have been found in contempt of court.

**{¶20}** Contempt is defined as a disregard of, or disobedience to, a court order. *Hissa v. Hissa*, 8th Dist. Cuyahoga Nos. 99498 and 100229, 2014-Ohio-1508, ¶ 19. A person found to be in contempt of court is subject to punishment. *See* R.C. 2705.05. Contempt is classified as civil or criminal depending upon the character and purpose of the punishment. *In re M.H.*, 8th Dist. Cuyahoga No. 97618, 2012-Ohio-3371, ¶ 10, citing *Brown v. Executive 200*, *Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). Whereas criminal contempt is solely punitive, civil contempt contemplates punishment that is remedial or coercive and for the benefit of the complainant. *Id.* at 253.

**{¶21}** Although a prison sentence may be imposed for civil contempt, the contemnor must be afforded the opportunity to purge the contempt. *Id.* "Once the contemnor purges his contempt, any sanctions will be discontinued because compliance has been achieved." *Id.*, quoting *U.S. Bank Natl. Assn. v. Golf Course Mgt., Inc.*, 12th Dist. Clermont No. CA2008-08-078, 2009-Ohio-2807, ¶ 16. Thus, the contemnor is said to "carry the keys to his prison in his own pocket." *Brown* at 253.

**{¶22}** Chiro relies on *Burke v. Burke*, 7th Dist. Mahoning No. 11 MA 166, 2012-Ohio-6279 ("*Burke I*"), in support of his argument. In *Burke I*, the trial court found the husband in contempt of court for failure to pay spousal support and sentenced him to ten days in jail. The contempt order further provided that the husband could purge the contempt by paying monthly support payments beginning on a certain date in the future. *Id.* at ¶ 7. On appeal, the court voided the purge condition because it regulated future conduct rather than punishing a violation of the trial court's order, and remanded the case to the trial court to impose a new purge condition. *Id*. at ¶ 44.

**{¶23}** Chiro argues that under *Burke I*, the trial court's contempt order in this case is void because the order provides a condition allowing him to purge the contempt by paying the $110,078.53 spousal support arrearage by a certain date in the future even though he had already paid the spousal support arrearage. However, the court in *Burke I* voided the purge condition in the trial court's contempt order because it reaffirmed the original support order and was an attempt to regulate the contemnor's future conduct rather than punish him for past conduct. *Id*. at ¶ 42. *Accord Burke v. Burke*, 7th Dist. Mahoning No. 13 MA 24, 2014-Ohio-1402 ("*Burke II*"). The husband in *Burke I* had not paid outstanding child support arrearages at the time of the trial court's order.

**{¶24}** In *Burke II*, the appellate court voided the trial court's new purge condition because, among other things, it again attempted to regulate future conduct by ordering payment of future monthly spousal support payments. *Burke II* at ¶ 1. The court explained that because contempt proceedings are based on the contemnor's violation of a

previous court order, a purge condition that punishes future conduct is invalid. *Id*. at ¶ 8. Furthermore, "for a purge condition to be valid, it must provide a 'clear opportunity to purge the contempt' rather than regulate future conduct." *Id.* at ¶ 10, citing *Frey v. Frey*, 197 Ohio App.3d 273, 2011-Ohio-6012, 967 N.E.2d 246, ¶ 37 (3d Dist.).

**{¶25}** *Burke I* and *Burke II* are distinguishable from the instant case. Unlike the husband in *Burke I* and *Burke II*, who had not paid his spousal support arrearage, Chiro paid his entire spousal support obligation in full. While the husband in *Burke I* and *Burke II* was obligated to pay spousal support indefinitely, Chiro's support obligation was limited to a two-year period. More importantly, the contempt order in this case did not provide a continuing order to regulate Chiro's future conduct; it provided a clear opportunity to purge the contempt. The contempt order states, in relevant part:

> The Support Obligor is hereby sentenced for said contempt to thirty (30) days in jail, or in the alternative, to perform not less than 200 hours of community service in lieu of actual incarceration. * * * However, the Support Obligor's sentence will be purged provided that the Support Obligor pays $110,078.53 * * * within 30 days of the journalization of this order.

Two days before the magistrate issued this decision, Chiro paid the entire amount of his spousal support obligation. Compliance had been achieved, and Chiro had already purged the contempt. Therefore, the contempt sanctions were automatically discontinued.

**{¶26}** Nevertheless, the child support order did not preclude the trial court from finding Chiro in contempt of court. As previously mentioned, there was no evidence that Chiro was unable to comply in full with the spousal support order in a timely manner.

Indeed, the parties' prenuptial agreement indicated Chiro owned assets worth millions of dollars. Under these circumstances, the magistrate reasonably concluded that Chiro's failure to comply with the order must have been willful.

{¶27} Foley filed her motion to show cause on May 29, 2013. Chiro's spousal support obligation terminated on April 29, 2013. Yet the evidence showed that Chiro had not made any payments at the time of the show cause hearing on November 15, 2013. Therefore, the magistrate correctly determined that Chiro was in violation of the court's spousal support order because he was "in arrears for spousal support through April 19, 2013, in the amount of $110,078.53." Chiro's contempt violation continued until he paid the support obligation in full on December 9, 2013.

{¶28} Finally, Chiro argues he should not be held in contempt because he delayed payment of the spousal support judgment until this court ruled on his motion to stay execution of judgment pending appeal. However, this court denied Chiro's motion to stay on June 19, 2013. Yet the judgment remained unpaid until December 9, 2013, six months after the motion to stay was denied and more than three weeks after the contempt hearing. Therefore, Chiro violated a court order by not paying spousal support, and he was in contempt of court at the time of the contempt hearing on November 15, 2013.

{¶29} Accordingly, the second assignment of error is overruled.

## Attorney Fees

{¶30} In the third assignment of error, Chiro argues the amount of the attorney fee award is not sustained by the manifest weight of the evidence. He contends the attorney

fee award is defective because the magistrate failed to identify which time entries he decided were attributable to the show cause proceedings.

{¶31} Pursuant to R.C. 3105.73(A), a domestic relations court "may award all or part of reasonable attorney's fees * * * to either party if the court finds the award equitable." In determining whether an award of fees is equitable, the court may consider several factors including "the conduct of the parties." R.C. 3105.73(A); *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, ¶ 33. "An award of attorney fees under R.C. 3105.73 lies within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." *Rand v. Rand*, 18 Ohio St.3d 356, 359, 481 N.E.2d 609 (1985).

{¶32} Foley's affidavit in support of her claim for attorney fees sought an award of $8,315. The affidavit contained a detailed itemization of the attorney time and costs incurred. The magistrate indicated in his decision that he reviewed the hours logged by the attorney and determined that $7,565 were reasonable. The magistrate further determined that $700 of the attorney fee bill were not reasonable and excluded them from the award. Chiro has not referred us to, nor have we found, any legal authority requiring a magistrate to delineate which fees he considered reasonable or unreasonable. The magistrate carefully reviewed the itemized time entries and found some entries were unreasonable when he determined the award. Under the circumstances of this case, we find no abuse of discretion.

{¶33} The third assignment of error is overruled.

**{¶34}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the domestic relations court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR